

**FILED**

JUN 06 2023

TIME:_____M
ALAN T. SMITH, CLERK
ST. FRANCIS COUNTY

## IN THE CIRCUIT COURT OF ST. FRANCIS COUNTY, ARKANSAS
## CIVIL DIVISION

| | |
|---|---|
| JACOB HARRIS and STRICKLIN PLUMBING, INC. **Plaintiffs** vs. BOAR'S HEAD PROVISIONS CO., INC. and TIMOTHY FERRELL **Defendants** | Case No. 62 CV – 2023 – 123 **Jury Trial Demanded** |

### COMPLAINT

Come the Plaintiffs, Jacob Harris and Stricklin Plumbing, Inc., by and through their attorney, Austin H. Easley of EASLEY & HOUSEAL, PLLC, and for their cause of action against the Defendants, Boar's Head Provisions Co., Inc. and Timothy Ferrell, state:

#### PARTIES AND JURISDICTION

1. Plaintiff Jacob Harris is an adult resident of Cross County, Arkansas.

2. Plaintiff Stricklin Plumbing, Inc. is an Arkansas corporation with its principal place of business in Cross County, Arkansas.

3. Defendant Boar's Head Provisions Co., Inc. (hereinafter "Boar's Head") is for-profit corporation with its principal place of business in the State of Florida. Boar's Head owns land and a facility in Forrest City, Arkansas, located in St. Francis County, where it employs workers and engages in the processing and packaging of deli meats and chesses, among other things. Boar's Head is registered with the Arkansas Secretary of State, and



EXHIBIT A

may be served through its registered agent for service at: C T Corporation System, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201. Boar's Head is responsible for the actions and inactions of its employees and agents under the doctrine of *respondeat superior*.

4. Defendant Timothy Ferrell is an adult resident of the State of Arkansas and is an employee of Boar's Head at the Forrest City location.

5. This cause of action concerns actions and inactions which occurred in St. Francis County, Arkansas on or about August 17, 2022.

6. This Court has full jurisdiction of the parties and subject matter hereto under the provisions of Ark. Code Ann. § 16-13-201(a), and venue properly lies in St. Francis County under the provisions of Ark. Code Ann. § 16-60-101.

## FACTS AND ALLEGATIONS

7. Plaintiff Jacob Harris is plumber and works for Plaintiff Stricklin Plumbing, Inc.

8. Harris and Stricklin Plumbing charge $180 per hour for Harris' work. At the times of the events complained of herein, Harris was regularly and reliably able to earn $1,500.00 per day for Stricklin Plumbing.

9. On August 17, 2022, at approximately 7:44 a.m., Boar's Head telephoned Harris, in his capacity as an employee of Stricklin Plumbing, and informed him there was a drain that was clogged at its facility in Forrest City. Harris immediately began preparations to go on-site and perform repairs.

10. Harris arrived at the Boar's Head facility at approximately 8:45-9:00 a.m.

11. Harris was wearing blue jeans, Lacrosse boots, and a short sleeve shirt.

12. Upon arrival, Harris was informed that the facility restricted access to non-employees, and he would have to be escorted throughout the facility. Harris was provided a hair net and beard net. Defendant Timothy Ferrell was the Boar's Head employee that escorted Harris throughout the facility.

13. Harris was informed that the stopped drain was located in a "rack wash pit," where meat racks were being washed.

14. Harris observed Boar's Head employees spraying off meat racks near the "rack wash" area. The Boar's Head employees were wearing rubber suits, hard hats, and face shields.

15. The liquid in the "rack wash" area drained into a pit that is approximately 12 feet wide and 12 feet long.

16. The pit that was clogged contained liquid that was approximately two feet deep.

17. Unbeknownst to Harris, Boar's Head used caustic acid and/or bleach to clean the meat racks, and the liquid in the pit was extremely caustic.

18. Harris had to get on his hands and knees in the liquid in order to access the clogged drain.

19. Defendant Ferrell was observing Harris the entire time he was on-site and exposed to the liquid in the clogged reservoir.

20. There were no signs warning Harris or others similarly situated that the liquid in the "rack wash" reservoir was toxic, caustic, dangerous, and able to cause chemical burns.

21. Neither Ferrell nor any other Boar's Head employee warned Harris, orally or otherwise, that the liquid he was being exposed to was toxic, caustic, or able to cause chemical burns.

22. After approximately 20 minutes of exposure to the liquid, Harris began to feel a tingling sensation on his legs. Harris asked Ferrell what was in the liquid in the pit. Ferrell did not provide an audible response. Another Boar's Head maintenance worker was within earshot and provided no response.

23. After approximately 50 minutes of exposure to the liquid, Harris saw mud on the auger cable and could tell the drain was not simply clogged but would need more significant repairs. At that time Harris also noticed that the tingling sensation had worsened.

24. Ferrell and other Boar's Head employees sat idly by while Harris worked in the liquid for between 50 minutes and an hour.

25. After Harris had gotten out of the liquid, Ferrell informed Harris that he needed to "go home and take a shower."

26. Harris left the facility at approximately 10:18 a.m.

27. Harris went directly home and took a shower.

28. Some hours after he had left the facility, at approximately 1:11 p.m., Anthony (last name unknown), a Boar's Head employee, and a female employee with Boar's Head telephoned Harris. At that time, for the first time, Harris was informed that the liquid he had been working in was a caustic acid. Harris was told that that he "should've hosed off" and "its in the safety video."

29. Harris was never shown or provided a safety video by Ferrell or Boar's Head.

30. The chemical exposure caused Harris to suffer significant chemical burns. The burns were from Harris' ankles up to and including his scrotum. There were also chemical burns on his arms. Pictures of some of the burns the Plaintiff's legs may be found below:

  

31. The chemical burns were extremely painful and limited Harris' ability to perform daily functions, sleep, walk, drive, work, etc. Harris' experienced significant, continuous pain for well over a month. Some of Harris' injuries and pain are permanent in nature.

32. Because of the pain, Harris was forced to miss work from August 17, 2022 to September 16, 2022.

33. Harris has suffered permanent scarring as a result of the chemical burns.

34. Stricklin Plumbing was not able to find another employee to perform the work Harris ordinarily performs. As such, Stricklin Plumbing suffered lost income of approximately $34,500.00. Stricklin Plumbing paid Harris $3,210.00 while he was unable to work.

## COUNT I: NEGLIGENCE OF BOAR'S HEAD

35. At all times relevant herein, Jacob Harris was a business invitee of Boar's Head.

36. Boar's Head owed the Plaintiff a duty to maintain the premises in a reasonably safe condition.

37. Boar's Head duty in this regard includes a duty to use ordinary care to protect him from known dangers as well as dangers which might be discovered by Boar's Head through reasonable care. See *DeVazier v. Whit Davis Lumber Co.*, 257 Ark. 371, 516 S.W. 2d 610 (1974).

38. Boar's Head's duty to maintain the premises includes an obligation to inspect the premises for potentially dangerous defects or conditions and warn of the same.

39. The rack washing pit was under the direct control of the Defendant.

40. The nature of the dangerous condition of the rack washing pit, i.e. the presence of caustic acid and/or bleach, was neither known nor obvious to Harris.

41. Boar's Head breached the aforementioned duties and created an unreasonably dangerous condition on their premises in the following particulars:

   a. Failing to properly inspect the premises;

   b. Failing to warn Harris, a business invitees, of the dangerous condition he was expected to encounter, i.e. the rack wash pit containing acid and/or bleach;

   c. Failing to exercise due, proper, and ordinary care to properly maintain the premises;

d. Failing to provide Harris appropriate personal protective equipment;

e. Failing to institute and/or follow adequate policies and procedures to warn and protect business invitees from harm;

f. In such other and further particulars as the evidence may show.

42. All of the above-referenced acts and omissions are in violation of the common laws and statutes of the State of Arkansas and the Defendant's duties owed to Plaintiffs.

43. Each of the aforementioned acts and omissions singularly or in combination with others constitute a breach of the Defendant's duty of care which proximately caused the harms and losses suffered by Harris and Stricklin Plumbing.

### COUNT II: ABSOLUTE LIABILITY OF BOAR'S HEAD

44. Boar's Head uses a caustic substance such as an acid or bleach to wash the racks that meat is cooked on.

45. The chemicals used by Boar's Head to wash the meat racks are ultrahazardous, and spraying these caustic chemicals onto meat racks is an ultrahazardous activity.

46. By using such chemicals, Boar's Head is absolutely liable for damages sustained by Plaintiffs which were proximately caused by the exposure, set forth more particularly below.

### COUNT III: NEGLIGENCE OF TIMOTHY FERRELL

47. Timothy Ferrell was the person in charge of leading Harris throughout the Boar's Head restricted facility.

48. Ferrell either knew or should have known that the rack wash pit Plaintiff was

called to unclog contained caustic substances. This is evidenced by Ferrell telling Plaintiff he needed to go home and take a shower after Plaintiff had been exposed to the caustic substance/s for an extended period of time.

49. Ferrell had a duty to inform Plaintiff of the dangerous condition which the Plaintiff was expected to and did encounter while being supervised by Ferrell.

50. Ferrell breached his duties by allowing the Plaintiff to encounter the caustic substance/s and not informing the Plaintiff that the exposure he was witnessing could cause the Plaintiff significant harm.

51. Ferrell's negligence proximately caused Plaintiffs' damages more particularly set forth below.

### COMPENSATORY DAMAGES

52. As a direct and proximate result of the actions and inactions of the Defendants, Plaintiff Jacob Harris received burns and injuries to his legs and scrotum. In addition, Plaintiff Harris has suffered from pain, suffering, and mental anguish, for all of which he should be compensated. Some of Harris's injuries and pain are permanent. Harris has also suffered from scarring and disfigurement.

53. As a direct and proximate result of the actions and inactions of the Defendants, Stricklin Plumbing lost profits in the amount of $34,500.00, as well as out of pocket costs of $3,210.00 for wages paid to Harris while he was unable to work.

54. Plaintiffs pray for judgment against the Defendants to fully them for the injuries, harms, and losses proximately caused by Defendants' negligence.

## PUNITIVE DAMAGES

55.     These Defendants knew or ought to have known that Harris' exposure to the caustic substances contained within the rack wash pit would naturally and probably result in injuries to Harris. Nevertheless, these Defendants watched and allowed Plaintiff's exposure in reckless disregard of the consequences. As such, punitive damages should be assessed against these Defendants to punish them, and to them, and others similarly situated, from such conduct in the future.

## JURY TRIAL DEMAND

56.     **Plaintiff demands a jury trial in St. Francis County, Arkansas.**

**WHEREFORE,** Plaintiffs Jacob Harris and Stricklin Plumbing, Inc. pray for judgment against the Defendants, Boar's Head Provisions Co., Inc. and Timothy Ferrell, for compensatory and punitive damages in a sum to be decided by a jury in an amount greater than that required for diversity jurisdiction in a federal case; **for a jury trial;** and for all other proper relief.

Respectfully submitted,

EASLEY & HOUSEAL, PLLC
Attorneys for Plaintiffs

By: _____
Austin H. Easley
Arkansas Bar No. 2010154
Post Office Box 1115
Forrest City, AR 72336-1115
P: (870) 633-1447
F: (870) 633-1687
austin@ehtriallawyers.com